**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE PETITION OF**<br><br>**JASON GUANRO** | **No. 22-mc-50-JMC-ZMF** |

## MEMORANDUM OPINION

## I.      BACKGROUND

Petitioner Jason Guarno[1] asks this Court to quash the congressional subpoena "reportedly issued to him by" the Select Committee to Investigate the January 6th Attack on the United States Capitol (hereinafter the "Committee").  Pet. to Quash at 1, ECF No. 1.  Petitioner does not allege that a subpoena has actually been issued, but instead seeks "a judicial forum to litigate the constitutionality and lawfulness of the subpoena."  *Id.*  Petitioner alleges that the Committee's theoretical subpoena is "invalid and unlawful" due to the Committee's structure, operations, and membership.  *Id.* at 2–3.  For the below reasons, the Petition is DENIED in an accompanying order.

## II.      LEGAL STANDARD

The congressional "power of inquiry—with process to enforce it—is an essential and appropriate auxiliary to the legislative function."  *McGrain v. Daugherty*, 273 U.S. 135, 174 (1927).  A congressional subpoena is valid when it is "related to, and in furtherance of, a legitimate task of the Congress."  *Watkins v. United States*, 354 U.S. 178, 187 (1957).  That is, such subpoena must "concern[] a subject on which 'legislation could be had.'"  *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 506 (1975) (quoting *McGrain*, 273 U.S. at 177).  "[I]n determining the

---

[1] Petitioner's name appears to be Jason Guarno; however, the case caption identifies the petitioner as "Jason Guanro," an apparent typo.  *See* Pet. to Quash at 1.

legitimacy of a congressional act[, courts] do not look to the motives alleged to have prompted it." *Id.* at 508 (citing *Watkins*, 354 U.S. at 200). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## III.   ANALYSIS

### A.   <u>Standing</u>

Article III of the United States Constitution bestows and restricts the judicial power of the federal courts to justiciable "[c]ases" and "[c]ontroversies." *See* U.S. Const. art. III, § 2. A core component of justiciability is standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Three elements establish the constitutional minimum of standing. *See id.* at 560–61. First, the petitioner must have suffered an "injury in fact" to "a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (cleaned up). Second, "there must be a causal connection between the injury and the conduct complained of" that is "fairly traceable." *Id.* (citation omitted). Third, "a favorable decision" must be "likely" to "redress[]" the injury. *Id.* at 561 (citation omitted).

This Petition succumbs to the first prong of standing. In *Clapper v. Amnesty International*, the plaintiffs alleged an "objectively reasonable likelihood" that their communications would be intercepted by government wiretaps "at some point in the future," but made no showing that their communications had been intercepted. 568 U.S. 398, 401 (2013). The Supreme Court held that plaintiffs' "theory of *future* injury [wa]s too speculative to satisfy the well-established [Article III standing] requirement that threatened injury must be 'certainly impending.'" *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Petitioner "has not received" a subpoena or offered the Court any evidence that one exists. Pet. to Quash at 1. Yet his injury hinges upon the harm from such subpoena. *See id.* Without

receipt of a subpoena, Petitioner has made no showing that an injury has occurred or is "certainly impending." *Clapper*, 568 U.S. at 401. Rather, Petitioner's alleged injury is "hypothetical." *Id.* at 402. This does not give rise to an injury in fact. *See id.* at 401. Accordingly, Petitioner lacks standing and the Court is without jurisdiction to hear this claim. *See Lujan*, 504 U.S. at 559–60.

      B.   <u>Ripeness</u>

The ripeness doctrine also requires that a petitioner's claim be "certainly impending." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996). Courts apply a two-pronged analysis when determining ripeness. *See id.* at 1431. First, courts evaluate "the fitness of the issues for judicial decision." *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977)). Second, courts evaluate "the hardship to the parties of withholding court consideration." *Id.* (quoting *Abbott Labs.*, 387 U.S. at 149).

With only a theoretical subpoena before this Court, Petitioner's claim has "not 'fully crystallized,' nor [will] the [Petitioner] feel [its] effects in a concrete way." *Nat'l Treasury Emps. Union*, 101 F.3d at 1431 (quoting *Nat. Res. Def. Council, Inc. v. EPA*, 859 F.2d 156, 166 (D.C. Cir. 1988)). Accordingly, this claim is unripe and the Court is without jurisdiction to hear it.

## IV.   CONCLUSION

"[T]he Court will not quash a hypothetical." *Brown v. Corp.*, No. 14-cv-1220, 2015 WL 5923541, at *1 (D. Conn. Oct. 9, 2015) (citation omitted).

 

                               _____

                               ZIA M. FARUQUI

                               UNITED STATES MAGISTRATE JUDGE